Ashley Farrell Pickett (SBN 271825)
ashley.farrellpickett@gtlaw.com
Bryan W. Patton (SBN 294910)
bryan.patton@gtlaw.com
Jonathan A. Schaub (SBN 298892)
jonathan.schaub@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel.:   310-586-7700
Fax:   310-586-7800

Attorneys for Defendant Netflix, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA COMBS, an Individual,<br><br>                    Plaintiff,<br><br>v.<br><br>NETFLIX, INC., a Delaware Corporation Registered with the California Secretary of State, and DOES  1-20, Inclusive,<br><br>                    Defendants. | Case No. 2:24-cv-09037-MRA-MAA<br><br>Assigned to the Hon. Mónica Ramírez Almadani<br><br>**DEFENDANT NETFLIX, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*Filed concurrently with Declarations of Raymond Fisher-Travis and Bryan W. Patton, Request for Judicial Notice, and Proposed Order*<br><br>Date:   January 6, 2025<br>Time:   1:30 p.m.<br>Courtroom:  10B<br><br>Action Removed:  October 21, 2024 |

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

**TO THE COURT, PLAINTIFF, AND HER COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** on January 6, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10B of the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Netflix, Inc. ("Defendant") will and hereby does move this Court, pursuant to the California Arbitration Act, California Code of Civil Procedure sections 1281, 1281.2 and 1281.4 (the "CAA") and the Federal Arbitration Act, 9 U.S.C. section 1, *et seq.*, (the "FAA") for an order:

1.  compelling Plaintiff Jessica Combs ("Plaintiff") to arbitrate each of the claims she asserts against Defendant in the above-entitled action (the "Action"), including any dispute regarding the existence, scope, or validity of the Arbitration Agreement she entered into with Defendant on May 6, 2017, or the arbitrator's jurisdiction; and

2.  dismissing this action in its entirety.

Good cause exists for this Motion because Plaintiff agreed to arbitrate each of the claims asserted in her Complaint. Specifically, Plaintiff entered into an arbitration agreement with Defendant on May 6, 2017 (the "Agreement"), which contains a broad arbitration provision encompassing all disputes arising under or related to her employment,[1] and includes a delegation clause requiring that questions of the existence,

---

[1]    Plaintiff agreed to arbitrate "any claim for breach of this Agreement and all employment related disputes, including claims under state and federal law." [Declaration of Raymond Fisher-Travis ("Fisher-Travis Decl."), ¶ 5, Ex. B.] Each claim Plaintiff asserts in this Action falls within the scope of this provision. Specifically, Plaintiff brings claims for (1) Discrimination under the Fair Employment and Housing Act ("FEHA"); (2) Retaliatory Termination under FEHA; (3) Sexual Harassment under FEHA; (4) Failure to Prevent Harassment under FEHA; (5) Harassment in Violation of California Constitution Article 1, Section 8; (6) Violation of California Labor Code Section 1102.5; (7) Negligence under California Civil Code Sections 43, 1708; (8) Wrongful Termination in Violation of Public Policy; (9) Hostile Work Environment; and (10) Breach of Covenant of Good Faith and Fair Dealing—each of which relies on an employer/employee relationship and is predicated on alleged conduct that occurred during Plaintiff's employment.

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

scope, or validity of the arbitration agreement, or the arbitrator's jurisdiction, be solely decided by an arbitrator and not this Court. Plaintiff has been provided with controlling authority demonstrating that the Agreement is enforceable and that her claims must proceed in arbitration but has refused to submit his claims to arbitration—necessitating the filing of this Motion. Under well-settled law, the Court should compel arbitration and dismiss this Action in its entirety.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Raymond Fisher-Travis and Bryan W. Patton, all pleadings in this action, and such other written and oral argument as the Court may entertain on this Motion. This Motion also follows repeated meet and confers with Plaintiff's counsel, including on October 30, 2024 during which the parties thoroughly discussed the substance and potential resolution of this Motion to Compel Arbitration by videoconference pursuant to Local Civil Rule 7-3.

Respectfully submitted,

Dated: November 8, 2024          GREENBERG TRAURIG, LLP


By    */s/ Ashley Farrell Picket*
Ashley Farrell Pickett
Attorneys for Defendant Netflix, Inc.

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

I.    INTRODUCTION ..........................................................................................6

II.   PLAINTIFF HAS NO BASIS TO CHALLENGE THE AGREEMENT,
      AND IS ENGAGING IN GAMESMANSHIP. ........................................7

III.  THE PARTIES ENTERED INTO A VALID AND ENFORCEABLE
      ARBITRATION AGREEMENT THAT DELEGATES QUESTIONS OF
      ENFORCEABILITY AND SCOPE TO THE ARBITRATOR. ..............9

      A.   The Parties Entered Into An Agreement to Arbitrate. ..................10
      B.   Plaintiff's Claims Fall within the Scope of the Agreement. .........10
      C.   The Agreement Contains a Valid Delegation Clause that Delegates all
           Questions of Scope or Validity of the Arbitration Agreement to the
           Arbitrator. ....................................................................................11

IV.   ANY CHALLENGES TO ENFORCEABILITY OF THE AGREEMENT
      FAIL AS A MATTER OF LAW.............................................................13

      A.   The EFAA Does Not Apply to the Agreement As a Matter of Law............14

           1.   The Asserted Harassment Predates Enactment of the EFAA,
                which does not Apply Retroactively.................................................14
           2.   The EFAA Cannot Apply Because Plaintiff's Sexual
                Harassment Claim is Barred by the Statute of Limitations. ...............15
           3.   The EFAA Does Not Apply Because Plaintiff Does Not State a
                Plausible Claim for Sexual Harassment.............................................16

      B.   The Agreement is Not Unconscionable. ........................................20

           1.   The Agreement is Not Procedurally Unconscionable. .....................20
           2.   The Agreement is Not Substantively Unconscionable. ....................22

V.    CONCLUSION.........................................................................................23

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## <u>CASES</u>

*Aanderud v. Superior Court*,
  13 Cal. App. 5th 880 (2017) ........................................................................4, 7, 8

*Ahern v. Asset Management Consultants, Inc.*,
  74 Cal. App. 5th 675 (2022) ...............................................................................6

*Aleman v. Airgas USA, LLC*,
  No. 2:23-cv-06863-FLA, 2024 WL 3937546 (C.D. Cal. Aug. 26, 2024)..........13

*Anderson v. Pitney Bowes, Inc.*,
  C04-4808...............................................................................................................4

*Armendariz v. Found. Health Psychcare Services, Inc.*,
  24 Cal. 4th 83 (2000) .............................................................................16, 17, 18

*Arouh v. GAN Limited*,
  No. 8:23-cv-02001-FWS, 2024 WL 3469032 (C.D. Cal. March 22, 2024).........9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)............................................................................................17

*Bailey v. San Francisco Dist. Attorney's Off.*,
  16 Cal. 5th 611 (2024) ........................................................................................14

*Barnes v. Festival Fun Parks, LLC*,
  No. 3:22-cv-165, 2023 WL 4209745 (W.D. Pa. June 27, 2023)........................10

*Brooks v. City of San Mateo*,
  229 F.3d 917 (9th Cir. 2000) ..............................................................................13

*Candelore v. Clark County Sanitation Dist.*,
  975 F.2d 588 (9th Cir. 1992) ..............................................................................13

*Castillo v. Altice USA, Inc.*,
  698 F. Supp. 3d 652 (S.D.N.Y. Oct. 12, 2023) .................................................10

*Cione v. Foresters Equity Servs.*,
  58 Cal. App. 4th 625 (1997) ................................................................................6

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

*Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*,
   83 Cal. App. 4th 677 (2000) ............................................................ 4

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) .......................................................... 7

*E.E.O.C. v. Prospect Airport Servs., Inc.*,
   621 F.3d 991 (9th Cir. 2010) ......................................................... 13

*Espejo v. S. Cal. Permanente Med. Grp.*,
   246 Cal. App. 4th 1047 (2016) ........................................................ 5

*Ferguson v. Corinthian Colleges, Inc.*,
   733 F.3d 928 (9th Cir. 2013) ........................................................... 6

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ..................................................................... 5, 7

*Fisher v. San Pedro Peninsula Hospital*,
   214 Cal. App. 3d 590 (1989) ......................................................... 14

*Fleming v. Oliphant Financial, LLC*,
   88 Cal. App. 5th 13 (2023) ............................................................. 5

*Kohler v. Inter-Tel Tech.*,
   244 F.3d 1167 (9th Cir. 2001) ....................................................... 12

*Kortan v. California Youth Auth.*,
   217 F.3d 1104 (9th Cir. 2000) ....................................................... 13

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
   74 Cal. App. 4th 1105 (1999) ........................................................ 16

*Landucci v. State Farm Ins. Co.*,
   65 F. Supp. 3d 694 (N.D. Cal. 2014) ............................................. 12

*Lawler v. Montblanc N. Am., LLC*,
   704 F.3d 1235 (9th Cir. 2013) ................................................... 13, 14

*Malone v. Superior Court*,
   226 Cal. App. 4th 1551 (2014) ..................................................... 4, 7

*Mendoza v. Trans Valley Transport*,
   75 Cal. App. 5th 748 (2022) ........................................................... 4

2

*Mendoza v. Trans Valley Transport*,
 75 Cal. App. 5th at 767–68 .................................................................... 4

*Mitchell v. Raymond James and Associates, Inc.*,
 No. 8:23-cv-2341-VMC-TGW, 2024 WL 4263151 (M.D. Fla. Sept. 23, 2024) ................................................................................ 11, 14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ............................................................................... 6

*Newcombe-Dierl v. Amgen*,
 No. CV 22-2155-DMG, 2022 WL 3012211 (C.D. Cal. May 26, 2022)
 ("Dierl's claims accrued when the adverse employment action occurred
 and she was injured, which was no later than November 12, 2021, the
 date of her termination.") ................................................................... 9

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
 112 F.4th 74 (2d Cir. 2024) (holding EFAA applied to retaliation claims
 where the retaliatory conduct occurred after the EFAA effective date of
 March 3, 2022) ............................................................................... 10

*Olsen v. Hortica Ins. Co.*,
 No. 5:21-cv-03891-EJD, 2022 U.S. Dist. LEXIS 27089 (N.D. Cal. Feb.
 15, 2022) ..................................................................................... 10

*Poublon v. C.H. Robinson Co.*,
 846 F.3d 1251 (9th Cir. 2017) ........................................................... 15

*Rayburn v. United Airlines, Inc.*,
 No. SACV21-00950-CJC, 2021 WL 8893645 (C.D. Cal. July 2, 2021) .......... 13

*Rodriguez v. Am. Techs., Inc.*,
 136 Cal. App. 4th 1110 (2006) ............................................................ 7

*Roman v. Super. Ct.*,
 172 Cal. App. 4th 1462 (2009) ........................................................... 16

*Shaw Group, Inc. v. Triplefine Intern. Corp.*,
 332 F.3d 115 (2d Cir. 2003) ............................................................... 7

*Stewart v. Preston Pipeline Inc.*,
 134 Cal. App. 4th 1565 (2005) ........................................................... 5

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

*Toal v. Tardif*,
  178 Cal. App. 4th 1208 (2009) ....................................................................5

*Turner v. Tesla, Inc.*,
  686 F. Supp. 3d 917 (N.D. Cal. 2023) .....................................................9

*United Steelworkers of Am. v. Am. Mfg. Co.*,
  363 U.S. 564 (1960)....................................................................................4

*Vasquez v. County of Los Angeles*,
  349 F.3d 634 (9th Cir. 2003) ...............................................................12, 13

*Yost v. Everyrealm, Inc.*,
  657 F. Supp. 3d 563 (S.D.N.Y. 2023) .....................................................11

## STATUTES

Cal. Gov. Code § 12960 (FEHA)..............................................................11

California Arbitration Act, Cal. Code Civ. Proc. §§ 1281, 1281.2 and 1281.4 ....1, 4

Cal. Civ. Code §§ 43, 1708....................................................................1, 2, 6

Cal. Lab. Code § 1102.5 .........................................................................1, 2, 6

Federal Arbitration Act, 9 U.S.C. section 1, *et seq.* .................................1

EFAA, 9 U.S.C. §§ 401 *et seq.* ..........................................................*passim*

## OTHER AUTHORITIES

AAA Rule 6 ...............................................................................................7

AAA Rule 9 ...............................................................................................18

AAA Rule 12 .............................................................................................17

AAA Rule 39 .............................................................................................18

AAA Rules, Rule 6 ....................................................................................3

California Constitution Article 1, Section 8 .........................................1, 2, 6

Local Civil Rule 7-3...................................................................................2

Fed. R. Civ. P. 12(b)(6)............................................................................12

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    **INTRODUCTION**

Defendant Netflix, Inc.'s ("Defendant") motion seeks straightforward mandatory relief. On May 6, 2017, Plaintiff Jessica Combs ("Plaintiff") signed an agreement entitled "**AGREEMENT REGARDING YOUR NETFLIX EMPLOYMENT (Including Mutual Agreement to Arbitrate)**" (emphasis in original) ("Agreement"). The Agreement contains a mutual arbitration provision that states "both [Plaintiff] and [Defendant] agree to arbitrate […] any claim for breach of this Agreement and all employment related disputes, including claims under state and federal law." [Fisher-Travis Decl., ¶ 5, Ex. B, Section 8.] The Agreement also contains a delegation provision that requires questions of the existence, scope, or validity of the arbitration agreement, or the arbitrator's jurisdiction, be solely decided by an arbitrator and not this Court.

Plaintiff and her counsel (i) had a copy of the Agreement for over 18 months before filing this action; (ii) Defendant provided Plaintiff with controlling authority demonstrating that the Agreement is valid and enforceable and participated in multiple meet and confers on its enforceability, (iii) Plaintiff failed to identify any basis on which to challenge enforceability of the Agreement, and (iv) acknowledged that the Agreement was "pretty good."  Despite all of this, Plaintiff filed the instant Action in Los Angeles Superior Court in July 2024 and declined to dismiss it without justification.[2]  [Patton Decl. ¶¶ 2–9.] Plaintiff's actions lack any good faith basis, and have forced the unnecessary expenditure of Defendant's and, more importantly, this Court's time and resources.

Defendant provided Plaintiff's counsel with the Agreement in January 2023. [Patton Decl. ¶ 2.]  To date, Plaintiff has not, and cannot, set forth any argument or authority to suggest that the Agreement is unenforceable, much less that a challenge to enforceability is for the Court and not an arbitrator to decide, as the Agreement requires.  [*Id.*, ¶ 9.]  The Court should enforce the parties' Agreement as written and as required by binding

---

[2] [Dkt. 1-1, Ex. A, Complaint.]

authority, dismiss this Action and compel Plaintiff to arbitrate each of the claims she asserts against Defendant, including any disputes she may raise regarding the validity, formation, or enforceability of the Agreement or the arbitrator's jurisdiction.

## II.    PLAINTIFF HAS NO BASIS TO CHALLENGE THE AGREEMENT, AND IS ENGAGING IN GAMESMANSHIP.

On May 6, 2017, Plaintiff signed an "**AGREEMENT REGARDING YOUR NETFLIX EMPLOYMENT (Including Mutual Agreement to Arbitrate)**" ("Agreement"). [Fisher-Travis Decl., ¶ 5, Ex. B (emphasis in original).] The arbitration provision in this Agreement states, in part:

> Let's not fight in court. Even in the best of relationships, disputes can arise. Rather than fighting it out in court, both you and Netflix agree to arbitrate under California law [ ] any claim for breach of this Agreement and all employment related disputes, including claims under state or federal law.

[*Id.*, Section 8.] Each claim Plaintiff asserts in this Action falls within the scope of this provision.[3]

The Agreement reiterates the importance of Plaintiff's review: "Take time to read what you're signing. If you have any questions or concerns about this Agreement, we'll be happy to talk with you. Also, we encourage you to talk to a lawyer or anyone else  you trust before signing this Agreement." [*Id.*, Section 9.] Plaintiff was provided with the Agreement on May 5, 2017—and after taking a day to review the *two-page* Agreement— signed it on May 6, 2017. [*Id.*]

The Agreement also explicitly states that all arbitration proceedings shall proceed

---

[3] Specifically, Plaintiff brings claims for (1) Discrimination under the Fair Employment and Housing Act ("FEHA"); (2) Retaliatory Termination under FEHA; (3) Sexual Harassment under FEHA; (4) Failure to Prevent Harassment under FEHA; (5) Harassment in Violation of California Constitution Article 1, Section 8; (6) Violation of California Labor Code Section 1102.5; (7) Negligence under California Civil Code Sections 43, 1708; (8) Wrongful Termination in Violation of Public Policy; (9) Hostile Work Environment; and (10) Breach of Covenant of Good Faith and Fair Dealing—each of which relies on an employer/employee relationship and is predicated on alleged conduct that occurred during Plaintiff's employment.

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

with the American Arbitration Association ("AAA"). [*Id.*] AAA's governing Employment Arbitration Rules and Mediation Procedures ("AAA Rules") contain an express delegation clause which provides that an arbitrator will have exclusive jurisdiction over questions of arbitrability. [*See* AAA Rules, Rule 6 ("[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," and "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.").]

For nearly two years, Plaintiff and her counsel have known that the Agreement, including the aforementioned provisions, is valid and enforceable. Specifically, in January 2023, at the request of counsel, Defendant provided Plaintiff's counsel a copy of her employment records, including the Agreement. [Patton Decl. ¶ 2.] A year later, in January 2024, Plaintiff's counsel stated that he planned to pursue Plaintiff's claims in court without any basis to challenge the Agreement. [*Id.*, ¶ 3.] In response, Defendant reiterated again that any claims must be brought in arbitration per the Parties' Agreement. Once more, Plaintiff failed to identify any basis on which to challenge the enforceability of the Agreement. On February 1, 2024, Defendant again followed up and explained the applicability of the Agreement and that any action needed to be filed in Arbitration. [*Id.*, ¶ 4.] Again, Plaintiff had no response. Despite having no basis to do so, Plaintiff breached her contractual obligations and filed this Action.

Thereafter, Defendant again attempted multiple meet and confers to avoid the need for this Motion. On October 21, 2024, Defendant provided a detailed written account of its motion with controlling authorities requiring Plaintiff to submit her claims to arbitration because Plaintiff was unable to telephonically meet and confer. [*Id.*, ¶¶ 5–6.] Plaintiff never responded to those authorities. [*Id.*, ¶ 6.] On October 30, 2024, Defendant engaged in a telephonic meet and confer with Plaintiff and raised all of its arguments in support of the motion. Plaintiff's counsel conceded that Plaintiff did not have any challenges to the validity or enforceability of the Agreement, stating that the Agreement was "pretty good."

The only challenge Plaintiff asserted was the inclusion of sexual harassment claims. [*Id.*, ¶ 7] When Defendant explained that such claims predated the enactment of any legislation that could preclude arbitration, Plaintiff had no response and has not offered any basis for filing this action in court rather than in arbitration to date. [*Id.*]

## III. THE PARTIES ENTERED INTO A VALID AND ENFORCEABLE ARBITRATION AGREEMENT THAT DELEGATES QUESTIONS OF ENFORCEABILITY AND SCOPE TO THE ARBITRATOR.

In ruling on a motion to compel arbitration, a court's role is to determine: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.[4] *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 890 (2017). Where, as here, the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator, the court's inquiry ends with these two initial questions. *Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1559 (2014); *see also United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960); *Anderson v. Pitney Bowes, Inc.*, C04-4808 SBA, 2005 U.S. Dist. LEXIS 37662, at *14–15 (N.D. Cal. 2005).[5]

---

[4] "California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration." *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 686 (2000). Via the CAA, the California Legislature "expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' Consequently, courts will 'indulge every intendment to give effect to such proceedings.'" *Mendoza v. Trans Valley Transport*, 75 Cal. App. 5th 748, 764 (2022) (citing *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992)) (internal citations omitted).

[5] As the Court explained in in *Mendoza v. Trans Valley Transport*, 75 Cal. App. 5th at 767–68, a delegation clause contained within a larger arbitration agreement is viewed as an independent, severable contract. *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). A court may consider contractual defenses to the enforceability of a delegation clause *only* if the challenge is directed specifically to the delegation clause itself. *Id.* at 768. Arguments that the broader arbitration agreement is unenforceable do not trigger the Court's review of the delegation clause, and such challenges must—pursuant to the delegation clause—be referred to the arbitrator.

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

Here, each of these elements is met, and the Court should thus make a finding that the parties have entered into a valid delegation clause and refer all other questions, including scope, validity and enforceability to the Arbitrator.

### A.    The Parties Entered Into An Agreement to Arbitrate.

Plaintiff voluntarily entered into the Agreement and is bound by it. The question of whether the parties have entered into an agreement to arbitrate is governed by state law principles of contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Fleming v. Oliphant Financial, LLC*, 88 Cal. App. 5th 13, 21 (2023). Under California law, "[a]n arbitration agreement is subject to the same rules of construction as any other contract." *Toal v. Tardif*, 178 Cal. App. 4th 1208, 1221  (2009). A party's electronic signature on a contract is a manifestation of assent to its terms and has the same legal effect as a handwritten signature. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588–89 (2005).

Here, Plaintiff electronically signed the Agreement on May 6, 2017. [Fisher-Travis Decl., ¶ 5, Ex. B.] Plaintiff received the two-page Agreement on May 5, 2017, and took a day to review its clear and concise provisions.  [*Id.* at ¶¶ 4–5.]  Notably, Plaintiff's signature is on the same page as the mutual arbitration provision.  [*Id.*, Ex. B, Section 8.] Plaintiff's signature is an indisputable manifestation of assent sufficient to indicate an intent to be bound. *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016) (defendant meets its burden on a motion to compel arbitration "by attaching to their petition a copy of the purported arbitration agreement bearing [plaintiff's] electronic signature").  Likewise, the Agreement is countersigned by Defendant.  [Fisher-Travis Decl., Ex. B, p. 3.] There is no dispute that Plaintiff entered into the Agreement and thus is bound by it.

### B.    Plaintiff's Claims Fall within the Scope of the Agreement.

Plaintiff agreed to arbitrate each and all claims alleged in this Action. "[B]ecause the scope of an arbitration agreement is a matter of contract, [the Court] must look to the express terms of the agreements at issue" to determine if the parties intended the dispute

10

to be arbitrated. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013); *Ahern v. Asset Management Consultants, Inc.*, 74 Cal. App. 5th 675, 687 (2022) ("In determining the scope of an arbitration clause, '[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made.'"); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Cione v. Foresters Equity Servs.*, 58 Cal. App. 4th 625, 641 (1997) (same).

Plaintiff's claims plainly fall within the scope of the Agreement. In signing the Agreement, Plaintiff agreed to arbitrate "all employment related disputes." [Fisher-Travis Decl., Ex. B, Section 8.] Plaintiff's Complaint asserts claims for (1) Discrimination under the Fair Employment and Housing Act ("FEHA"); (2) Retaliatory Termination under FEHA; (3) Sexual Harassment under FEHA; (4) Failure to Prevent Harassment under FEHA; (5) Harassment in Violation of California Constitution Article 1, Section 8; (6) Violation of Labor Code Section 1102.5; (7) Negligence under Civil Code Sections 43, 1708; (8) Wrongful Termination in Violation of Public Policy; (9) Hostile Work Environment; and (10) Breach of Covenant of Good Faith and Fair Dealing. [Dkt. 1-1, Ex. A, Complaint.] Each of these claims rely on an employer/employee relationship and are predicated on alleged conduct that occurred during Plaintiff's employment with Defendant.

## C.    <u>The Agreement Contains a Valid Delegation Clause that Delegates all Questions of Scope or Validity of the Arbitration Agreement to the Arbitrator.</u>

Said simply, an agreement to arbitrate exists that covers Plaintiff's claims. Because the Agreement incorporates a delegation clause, the court's inquiry ends here and the parties must be compelled to arbitration.

Specifically, the Agreement explicitly requires that any arbitration proceed before AAA and thereby incorporates by reference AAA's arbitration rules that expressly state "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope or validity of the arbitration agreement," and that "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." [*See* AAA Rule 6.] *See Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1123 (2006) (incorporation of AAA rules is a sufficient delegation clause; "By incorporating [the AAA rules] into their agreement, the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability."); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004) (incorporation by reference of AAA rules was "clear and unmistakable evidence of the intent that the arbitrator will decide whether a Contested Claim is arbitrable"); *Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1559 (2014) (where an arbitration agreement contains a valid and enforceable delegation clause, courts must enforce same, and order a case to arbitration to decide threshold enforceability issues); *see also Shaw Group, Inc. v. Triplefine Intern. Corp.*, 332 F.3d 115, 118 (2d Cir. 2003) (enforcing delegation clause in arbitration agreement which provided for arbitration to be administered by particular organization and the rules of that organization "expressly provide for [the arbitrator] to resolve in the first instance any disputes about its own jurisdiction").

The Agreement expressly provides that arbitration is to proceed before AAA, and the AAA Rules clearly delegate to the *arbitrator* any disputes regarding jurisdiction and the existence, scope or validity of the arbitration agreement. As black-letter law holds, the parties have clearly and unmistakably agreed that an arbitrator, not a court, decide challenges to the Agreement. *First Options*, 514 U.S. at 944; *Aanderud*, 13 Cal. App. 5th at 891–93 ("Although threshold questions of arbitrability are ordinarily for courts to decide in the first instance . . . the parties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement"; finding parties' reference to JAMS "further evidences the parties' clear and unmistakable intent to submit issues of arbitrability to the arbitrator") (internal quotation and citation omitted). Accordingly, Plaintiff cannot attempt to make an end run around her contractual

obligations and waste this Court's time and resources on issues that the parties have "clearly and unmistakably" mandated by decided by an arbitrator, and not a court.

Similarly, any contention Plaintiff may raise that the Agreement is void because of alleged formation defects or due to alleged contract defenses like fraud, duress, or unconscionability must also be decided by the arbitrator and not the Court. *Tiri*, 226 Cal. App. 4th at 240 (where parties' agreement contains a delegation clause "the arbitrator is to consider challenges to the arbitration agreement as a whole"); *Aanderud*, 13 Cal. App. 5th at 891–92 ("the parties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement.") (internal citation and quotation omitted.). So, any attempt by Plaintiff to challenge the enforceability of the Agreement belongs before an arbitrator and not the Court.

In sum, (i) Plaintiff entered into the Agreement (ii) that covers each and all of the claims alleged in this Action. This is all the Court needs to find to compel Plaintiff to arbitrate her claims. To the extent Plaintiff wishes to challenge the Agreement on some other basis, the Agreement requires such challenges be decided by an arbitrator, not a court. So, the Court must compel Plaintiff to arbitrate her claims and dismiss this Action.

## IV.   ANY CHALLENGES TO ENFORCEABILITY OF THE AGREEMENT FAIL AS A MATTER OF LAW.

As discussed above, any challenges to enforcement of this Agreement must be decided by the arbitrator.  Should this Court nonetheless consider challenges asserted by Plaintiff, which it should not, any such challenge will fail.  The only argument Plaintiff has raised to date is the application of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA")[6], which fails because the EFAA (1) does not apply

---

[6]   The EFAA provides that "[t]he applicability of this chapter to an agreement to arbitrate . . . shall be determined by a court, rather than an arbitrator . . . ." 9 U.S.C. § 402. Defendant maintains that based upon Plaintiff's express allegation that she was terminated on  December 1, 2021, several months prior to the EFAA's enactment, it is evident that the EFAA is wholly inapplicable to this dispute and the Court need not assess application of the EFAA whatsoever. However, to the extent the Court does consider the issue of

retroactively to the conduct asserted in this Action; and (2) if it did apply, which it does not, it would not apply because Plaintiff has failed to state a claim for sexual harassment. Finally, although Plaintiff has not asserted any argument regarding unconscionability to date, any such argument would fail because the Agreement is clear on its face, conspicuously discloses that it is an arbitration agreement and contains all substantive provisions required under California law.

## A.    The EFAA Does Not Apply to the Agreement As a Matter of Law.

The EFAA, which permits a plaintiff to avoid arbitration when they allege a plausible claim of sexual harassment [9 U.S.C. § 402(a)], does not apply to this Action as a matter of law on three separate and independent bases.

### 1.    The Asserted Harassment Predates Enactment of the EFAA, which does not Apply Retroactively.

The EFAA cannot apply as a matter of law to the claims at-issue here because the conduct Plaintiff predicates her claims on occurred before its enactment "on March 3, 2022"—and "[it] does not have retroactive effect." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 924 (N.D. Cal. 2023). *See also* 9 U.S.C. § 401; *see also* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022) ("This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act.[7]"). As black-letter case law maintains, for the EFAA to apply and potentially invalidate a predispute arbitration agreement, the relevant "claims [must have] accrued on or after March 3, 2022." *Id.*; *see, e.g.*, *Arouh v. GAN Limited*, No. 8:23-cv-02001-FWS, 2024 WL 3469032, at *6 (C.D. Cal. March 22, 2024) ("Because Plaintiff's claims accrued

---

application of the EFAA, based on the foregoing Section 402, Defendant maintains that the Court's consideration should end with that issue, and that any other considerations concerning jurisdiction and the existence, scope, and validity of the Agreement should be taken up by the arbitrator pursuant to the parties' delegation.

[7] Determinations of the applicability of the EFAA are a matter of federal law. *See* 9 U.S.C. § 402(b) ("An issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law.").

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

before March 3, 2022, the EFAA does not apply to his claims."); *Newcombe-Dierl v. Amgen*, No. CV 22-2155-DMG (MRWx), 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022) ("Dierl's claims accrued when the adverse employment action occurred and she was injured, which was no later than November 12, 2021, the date of her termination.") (finding EFAA inapplicable); *see also Castillo v. Altice USA, Inc.*, 698 F. Supp. 3d 652, 657 (S.D.N.Y. Oct. 12, 2023) ( "Courts have repeatedly rejected the notion that 'disputes' arise – and that the EFAA applies – only when complaints or charges are filed."); *Barnes v. Festival Fun Parks, LLC*, No. 3:22-cv-165, 2023 WL 4209745, at *10 (W.D. Pa. June 27, 2023) (noting that Congress used the terms "dispute" and "claim" with separate meanings in the EFAA and holding claims must accrue before March 3, 2022 for the EFAA to apply).

Plaintiff alleges she suffered two instances of purported sexual harassment in 2018 and was terminated by Defendant on December 1, 2021. [Complaint, ¶¶ 15, 27, 51.] Plaintiff does not allege any conduct or actions by Defendant after her termination in December 2021. And the fact that her employment terminated on December 1, 2021 makes it impossible for any claims to have accrued after the effective date of the EFAA on March 3, 2022. *See, e.g.*, *Barnes*, 2023 WL 4209745, at *12 ("[T]he dispute arose in July 2019 when the discriminatory conduct began, and at the latest, her claim accrued on July 14, 2021, the date her employment was terminated.") Furthermore, on the subject of related but independent claims, where the underlying alleged sexual harassment occurs *prior to* the effective date of the EFAA, the EFAA *only* applies to any related claims, such as retaliation, if the requisite elements of those claims occurred beyond the effective date of the EFAA. *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 91–92 (2d Cir. 2024) (holding EFAA applied to retaliation claims where the retaliatory conduct occurred after the EFAA effective date of March 3, 2022). Thus, the EFAA is wholly inapplicable here.

### 2. The EFAA Cannot Apply Because Plaintiff's Sexual Harassment Claim is Barred by the Statute of Limitations.

The EFAA cannot apply to Plaintiff's Action because her claims for sexual harassment are time-barred. Plaintiff's sexual harassment claims are subject to a three-year

statute of limitations. *See, e.g.*, *Olsen v. Hortica Ins. Co.*, No. 5:21-cv-03891-EJD, 2022 U.S. Dist. LEXIS 27089, at *8 (N.D. Cal. Feb. 15, 2022) (three-year limitations period for sexual harassment claims under FEHA); Cal. Gov. Code § 12960(e) ("A complaint alleging any other violation of Article 1 [of the FEHA] shall not be filed after the expiration of three years from the date upon which the unlawful practice or refusal to cooperate occurred."). As discussed above, Plaintiff alleges two incidents in 2018 in support of her sexual harassment claim. She filed suit in July 2024.  So, her sexual harassment claims are time-barred and do not allow the application of the EFAA.

### 3.    The EFAA Does Not Apply Because Plaintiff Does Not State a Plausible Claim for Sexual Harassment.

On top of the foregoing fatal deficiencies, the EFAA cannot apply because Plaintiff has not stated a plausible claim for sexual harassment.  Courts interpreting the EFAA hold that allegations of sexual harassment that do not meet exacting federal pleading standards and thus could not survive a 12(b)(6) challenge cannot rely on the EFAA to avoid contractual obligations to adjudicate all claims via favored arbitration. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) (analyzing claims under the EFAA plausibility standard of a 12(b)(6) motion; "the term 'alleged' as used in § 401(4) [of the EFAA] is best read to implicitly incorporate the plausibility standard"). Where a plaintiff fails to allege a plausible claim for sexual harassment, the EFAA does not apply, including as to related but independent claims such as *retaliation* based on the purported sexual harassment. *See Mitchell v. Raymond James and Associates, Inc.*, No. 8:23-cv-2341-VMC-TGW, 2024 WL 4263151, at *2 (M.D. Fla. Sept. 23, 2024) ("Because [plaintiff's] allegations do not plausibly constitute sexual harassment under federal law, her retaliation claim fails to trigger EFAA."). So, the EFAA only applies to actions asserting allegations of sexual harassment specifically and factually and  "capable of surviving dismissal at the threshold of a litigation[.]" *Yost*,  657 F. Supp. 3d at 585.

A *prime facie* case for sexual harassment requires a plaintiff to allege (1) that she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was

unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Here, Plaintiff has not plausibly stated a sexual harassment claim because, as pled, this claim would be subject to dismissal under Rule 12(b)(6) for three independent reasons. Thus, the EFAA does not apply.

**First,** as articulated above, the claim for sexual harassment is barred by the statute of limitations. For this reason alone, it is subject to dismissal under Rule 12(b)(6) and cannot plausibly state a claim as a matter of law.

**Second**, Plaintiff's Complaint fails to allege facts to support employer liability. "[A]n employer is strictly liable under the FEHA for sexual harassment by a supervisor." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014) (citing *State Dept. of Health Services v. Sup.Ct.*, 31 Cal. 4th 1026, 1042 (2003)). By contrast, an employer is liable for harassment by a *nonsupervisory* employee only "if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." *Kohler v. Inter-Tel Tech.*, 244 F.3d 1167, 1172 (9th Cir. 2001) (citing Gov. Code § 12940(j)(1)).

Plaintiff alleges two instances of sexual harassment in her Complaint. Neither involves harassment by a supervisor, so Defendant cannot be liable for it. For the September 2018 offsite event, Plaintiff does not allege that she previously reported any sexual harassment or provide any other facts to suggest that Defendant knew or should have known that this offsite or its related activities would lead to sexual harassment. [*See, e.g.*, Complaint, ¶ 27.] For the alleged October 2018 incident, Plaintiff does not even allege that the individual "who made sexual advances toward her while she was getting a coffee on the main floor common area" during a trip to Singapore was Defendant's employee. [Complaint, ¶ 15.] Plaintiff fails to allege any facts to establish *Defendant's* liability for the two instances of sexual harassment she sets forth. As she fails to state a claim for sexual harassment, the EFAA cannot apply.

**Third**, Plaintiff fails to allege severe or pervasive conduct required to state a claim for sexual harassment.  Whether conduct is sufficiently severe or pervasive entails both a subjective and objective inquiry, whereby courts "consider not only the feelings of the actual victim, but also assume the perspective of the reasonable victim." *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010). "[T]he working environment must both subjectively and objectively be perceived as abusive." *Vasquez*, 349 F.3d at 632. As a starting point, "[t]he plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) ("courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial"); *see also Rayburn v. United Airlines, Inc.*, No. SACV21-00950-CJC, 2021 WL 8893645, at *3 (C.D. Cal. July 2, 2021) ("[A] single comment falls well short of alleging harassment so severe that it created a hostile work environment."); *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) ("an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship") (finding single incident of harassment insufficient to establish claim); *Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) ("[I]solated incidents of sexual horseplay alleged by [plaintiff] took place over a period of years and were not so egregious as to render [her] work environment 'hostile.'"); *cf. Aleman v. Airgas USA, LLC*, No. 2:23-cv-06863-FLA, 2024 WL 3937546, at *4 (C.D. Cal. Aug. 26, 2024) (allegations sufficient to demonstrate a concerted pattern of harassment consisted of "scheming to get Plaintiff fired, ignoring Plaintiff's calls and texts, communicating with Plaintiff only through a mechanic, shaming Plaintiff in front of his coworkers, and ignoring Plaintiff's safety concerns and instructing him to perform unsafe work"). Factors considered with regards to severe or pervasive conduct include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110

(9th Cir. 2000) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

Plaintiff fails to meet this fundamental element of the claim. Instead, she alleges two vague purported instances of sexual harassment over the course of nearly five years of employment with Defendant. [Complaint, ¶¶ 15 ("During a Singapore trip in October 2018, [Plaintiff] was aggressively approached by a male colleague who made sexual advances toward her while she was getting a coffee on the main floor common area."), 27–30 (during "team building exercises" in "September of 2018" a "colleague" described Plaintiff as "smart, intelligent, naive, timid, shy, turned red, vulnerable, capable, beautiful, beautiful, beautiful, powerful, etc.").] Plaintiff's allegations are, by definition, "occasional, isolated, sporadic," and thus non-actionable. *Lawler*, 704 F.3d at 1244; *see also Mitchell*, 2024 WL 4263151, at *1 (finding plaintiff's allegations of "approximately fourteen instances of sexual harassment over a fifteen-year span" were not "objectively severe and pervasive," that plaintiff did not plead a plausible claim for sexual harassment, and that EFAA accordingly did not apply); *see also Bailey v. San Francisco Dist. Attorney's Off.*, 16 Cal. 5th 611, 628 (2024) (internal citations omitted) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment."); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 610 (1989) (conduct that is "occasional, isolated, sporadic, or trivial" is insufficient to allege harassment). To be sure, neither incident is severe: the first alleges that Plaintiff received some verbal compliments during a team building exercise, and the second, as vaguely alleged by Plaintiff, consisted of someone asking her out. [Complaint, ¶¶ 15, 30.]

Similarly, Plaintiff's other allegations do not constitute sexual harassment or otherwise support this claim. For example, she alleges that she "received many more meeting requests from males than females." [Complaint, ¶ 16.] Also, she alleges that she walked through "places like the cafeteria during 'Pride' events with drag queens dancing sexually, wearing dresses and heels in the common areas - without warning." [Complaint, ¶ 18.] Neither of these examples is inappropriate for the workplace let alone is evidence of sexual harassment.

Finally, any purported sexual harassment did not alter the conditions of Plaintiff's employment. Plaintiff alleges that "despite the uncomfortable culture of sexuality at Netflix, [she] performed admirably as was noted in her performance reviews." [Complaint, ¶ 34.] So, Plaintiff fails to allege facts supporting any severe or pervasive sexual harassment and the claim fails.

Plaintiff has failed to plausibly plead a sexual harassment claim, so the EFAA does not apply and should not impact this Court's analysis of this Motion. *Mitchell*, 2024 WL 4263151, at *1 (declining to apply EFAA where Plaintiff failed to plausibly state a claim for sexual harassment, including by failing to allege conduct that was sufficiently severe and pervasive where plaintiff alleged "approximately fourteen instances of sexual harassment over a fifteen-year span" that were not "objectively severe and pervasive").

## B.    The Agreement is Not Unconscionable.

Under California law, "to establish [a defense of unconscionability], the party opposing arbitration must demonstrate that the contract . . . is *both* procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (emphasis added). The Agreement at issue is neither. Rather, it is bilateral (i.e., requires the arbitration of claims that either side may have against the other) and goes far beyond the minimum requirements that courts utilize in assessing unconscionability. In fact, at least three courts have found the Agreement (or a nearly identical version)[8] to be valid and enforceable. [Request for Judicial Notice, Exs. 1–6.]

### 1.    The Agreement is Not Procedurally Unconscionable.

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an

---

[8] The only distinction between the Agreement and those at issue in the *Ivery* and *Golde* matters was the use of JAMS rather than AAA as the arbitration provider.

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

absence of meaningful choice. [] Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1469 (2009) (citations and quotation marks omitted). California courts acknowledge that employer-employee arbitration agreements often have some elements of adhesion due to the unavoidable nature of the employer-employee relationship. Case law, however, makes it clear that this fact— by itself—does not invalidate such arbitration agreements. *See Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 115 (2000) ("arbitration is favored in this state" even if "[i]n the case of preemployment arbitration contracts, the economic pressure exerted by employers . . . may be particularly acute . . . ."). Thus, courts routinely enforce arbitration agreements that are signed by employees so long as they are clearly set forth in a conspicuous manner. *See*, *e.g. Roman*, 172 Cal. App. 4th at 1470–71 (arbitration agreement in employment application enforceable where it was conspicuous); *see also Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) ("the cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.").

The Agreement here was conspicuously titled "**AGREEMENT REGARDING YOUR NETFLIX EMPLOYMENT (Including Mutual Agreement to Arbitrate)**." [Fisher-Travis Decl., Ex. B (emphasis in original).] As such, the very title of the document put Plaintiff on notice that the Agreement contained a mutual arbitration provision. Moreover, the Agreement put Plaintiff on notice that she needed to review it closely and, if she wished, speak to a lawyer about it: "Take time to read what you're signing. If you have any questions or concerns about this Agreement, we'll be happy to talk with you. Also, we encourage you to talk to a lawyer or anyone else  you trust before signing this Agreement. [*Id.*, Section 9.] Plaintiff thereafter attested to her understanding of the Agreement just prior to her signature (and just below the arbitration provision): "**I have read this Agreement (and the attachment) and understand and agree to its terms.**"

[*Id.*, p. 2 (emphasis in original).] Plaintiff received the Agreement on May 5, 2017, reviewed the two-page Agreement for a day, and then signed in on May 6, 2017. [*Id.*]

The Agreement was voluntary, clear on its face and provided Plaintiff ample time to review. There is no basis upon which Plaintiff can support a finding of procedural unconscionability.

### 2.    The Agreement is Not Substantively Unconscionable.

*Armendariz* remains the leading case on the basic standards for assessing whether an arbitration agreement signed by an employee is substantively unconscionable under California law. In that case, the California Supreme Court explained that the inquiry concerning substantive unconscionability focuses on whether the arbitration agreement is "overly harsh" or leads to "one-sided" results. *Armendariz*, 24 Cal. 4th 83 at 114. In analyzing that question, the court confirmed that a "modicum of bilaterality" is required in the employment context.

Here, "*both* [Plaintiff] and [Defendant]" agreed to arbitrate all disputes covered by the Agreement. [Fisher-Travis Decl., Ex. B, Section 8 (emphasis added).] Simply, there is nothing unilateral, illusory or even one-sided about the Agreement. Rather, it goes well beyond a mere "modicum of bilaterality," and any attempt to recast the Agreement's plain language addressed to the employee in an effort to accurately and simply explain their rights as a one-sided obligation is an obvious misreading of the Agreement.

The *Armendariz* court also confirmed certain minimum requirements for the lawful arbitration of rights pursuant to a mandatory employment arbitration agreement. The court held that such an agreement is enforceable if it: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Armendariz*, 24 Cal. 4th at 102, abrogated in part by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). In this case, the Agreement satisfies these requirements.

First, the Agreement provides that arbitration will be conducted by AAA, and the AAA Rules provide for neutral arbitrators (AAA Rule 12).

Second, the Agreement places the extent of discovery in the arbitrator's discretion (AAA Rule 9), and otherwise places no limitations whatsoever on the scope of discovery. [*See generally* Fisher-Travis Decl., Ex. B.]

Third, the AAA Rules require a written award (AAA Rule 39).

Fourth, the Agreement places no limitations whatsoever on the types of relief that the parties can obtain in arbitration. [*See generally*, Fisher-Travis Decl., Ex. B.] Further, the Agreement provides that either party "may file an application for injunctive relief (or other provisional remedy) where a temporary order from a court may be necessary to preserve the status quo or protect the interests in dispute." [Fisher-Travis Decl., Ex. B, Section 8.]

Fifth, the Agreement provides that Defendant will pay all costs of the arbitration other than an initial $250.00 filing fee where Plaintiff initiates the arbitration, and thus does not require employees to pay unreasonable costs, fees, or expenses to access arbitration. [*Id.*, Section 8.]

The Agreement satisfies each of the five factors outlined by the *Armendariz* court and is not substantively unconscionable.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court enter an order compelling arbitration of Plaintiff's claims and dismissing this action in its entirety.

Respectfully submitted,

Dated:  November 8, 2024          GREENBERG TRAURIG, LLP

By     */s/ Ashley Farrell Picket*
Ashley Farrell Pickett
Attorneys for Defendant Netflix, Inc.

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION

### **Word Count Certification**

The undersigned, counsel of record for Defendant Netflix, Inc., certifies that this brief contains 6,423 words, which complies with the word limit of L.R. 11-6.1 and Judge Almadani's listed Procedures.

Respectfully submitted,

Dated: November 8, 2024         GREENBERG TRAURIG, LLP

By      */s/ Ashley Farrell Picket*
        Ashley Farrell Pickett
        Attorneys for Defendant Netflix, Inc.

DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL ARBITRATION